## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

FELICITY L. D. o/b/o M.A.L.,

                    Plaintiff,

vs.                                                    Case No. 19-CV-01-FHM

ANDREW M. SAUL,
Commissioner of Social Security
Administration,

                    Defendant.

## OPINION AND ORDER

Plaintiff seeks judicial review of a decision of the Commissioner of the Social
Security Administration denying Social Security disability benefits.[1]  In accordance with 28
U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States
Magistrate Judge.

## Standard of Review

The role of the court in reviewing the decision of the Commissioner under 42 U.S.C.
§ 405(g) is limited to a determination of whether the record as a whole contains substantial
evidence to support the decision and whether the correct legal standards were applied.
*See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1237 (10th Cir. 2001); *Winfrey v.
Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,*
26 F.3d 1027, 1028 (10th Cir. 1994).  Substantial evidence is more than a scintilla, less
than a preponderance, and is such relevant evidence as a reasonable mind might accept

---

[1]     Plaintiff's March 11, 2016, application for disability benefits was denied initially and on
reconsideration.  A hearing before Administrative Law Judge ("ALJ") Luke Liter was held July 20, 2017.  By
decision dated September 27, 2017, the ALJ entered the findings that are the subject of this appeal.  The
Appeals Council denied Plaintiff's request for review on January 19, 2018.  The decision of the Appeals
Council represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981,
416.1481.

as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the court would have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Servs.,* 961 F.2d 1495 (10th Cir. 1992).

## Sequential Evaluation for Child's Disability Benefits

The procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924(a). The first step is to determine whether the child is performing substantial gainful activity. If not, the next consideration is whether the child has a "severe" mental or physical impairment. A "severe" impairment is one that causes more than minimal functional limitations. If a "severe" impairment is identified, the claim is reviewed to determine whether the child has an impairment that: 1) meets, medically equals, or functionally equals the listings of impairments for children;[2] and 2) meets the duration requirement.

If the child does not have impairments of a severity to meet a listing, the severity of the limitations imposed by impairments are analyzed to determine whether they functionally equal a listing. Six broad areas of functioning, called domains, are considered to assess what a child can and cannot do. Impairments functionally equal a listing when the impairments result in "marked" limitations in two domains or an "extreme" limitation in one

---

[2] The listings describe, for each of the major body systems, medical findings which are considered severe enough that they represent impairments which presumptively demonstrate disability. 20 C.F.R. Pt. 404, Subpt. P, App. 1.

domain.  20 C.F.R. § 416.926a.  The six domains are:  1) acquiring and using information; 2) attending and completing tasks; 3) interacting and relating with others; 4) moving about and manipulating objects; 5) caring for yourself; and 6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  A limitation is "marked" when it interferes seriously with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(2)(I).  An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.926a(e)(3)(I).

## Background

Plaintiff[3] was 3 years old on the date of the application for benefits and 4 years old on the date of the ALJ's denial decision.  Plaintiff alleges disability based on a hearing loss, speech impairment, and borderline intellectual functioning.

## The ALJ's Decision

The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [R. 16].  The ALJ also found that Plaintiff does not have an impairment or combination of impairments that functionally equals the severity of the listings.  In particular, the ALJ found that Plaintiff has a less than marked limitation in the domain of acquiring and using information; no limitation in attending and completing tasks; a marked limitation in interacting and relating with others; no limitation in moving about and manipulating objects; no limitation in the ability to care for himself; and

---

[3]  The court refers to the child as Plaintiff throughout this Opinion and Order.

less than marked limitation in health and physical well-being.  [R. 18-23].  The ALJ therefore determined that Plaintiff is not disabled as defined in the Social Security Act.

### Plaintiff's Allegations

Plaintiff asserts that the ALJ did not properly consider whether he was disabled based on the Listings of Impairments; the ALJ erred in his evaluation of functional equivalence; and the case should be remanded for further proceedings because the decision was rendered by an ALJ whose appointment was invalid at the time he rendered the decision.

### Analysis

Consideration of Listings of Impairments (Listings)

Plaintiff argues that the ALJ failed to adequately discuss his conclusions about whether Plaintiff met a Listing.  In particular, Plaintiff argues that the ALJ erred by failing to mention or discuss Listing  111.09, Communication Impairment.  The undersigned finds no error in the ALJ's failure to mention Listing 111.09.

That Listing is found in the category of Listings pertaining to neurological disorders, such as:  epilepsy, coma or persistent vegetative state and neurological disorders that cause disorganization of motor function and neuromuscular dysfunction or communication impairment.   The limitations resulting from the impact of such neurological disease processes are evaluated under the Listings in the 111 category.  20 CFR Pt 404, Subpt. P, App.1, § 111.00.  Listing 111.09 requires a communication impairment associated with documented neurological disorder and a document speech deficit or comprehension deficit or impairment of hearing.  Plaintiff has not identified a neurological disorder associated with

4

his communication impairment and the record does not suggest the existence of one.  It is Plaintiff's burden to show that an impairment is equivalent to a Listing.  *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).  Furthermore, <u>all</u> of the specified medical criteria must be matched to meet a Listing.  An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1988).

The court finds that Listing 111.09 is wholly inapplicable to Plaintiff's case and the ALJ's failure to discuss that Listing does not constitute error.  The court further finds that the ALJ's discussion of the applicable Listing was sufficient and that the ALJ's conclusion is supported by substantial evidence.

Functional Equivalence Evaluation

The ALJ found that Plaintiff has a less than marked limitation in the domain of acquiring and using information.  In making that finding the ALJ stated:

> The claimant's mother testified, and the record confirms, the claimant has difficulty with speech.  While the claimant's Clinical Evaluation of Language Fundamentals test showed impairments, they were not at least two standard deviations below the mean (Exhibit B2F-3).  Additionally, the claimant's medical record shows he has excellent speech understanding scores (Exhibit B6F-1).  Therefore the claimant only has less than marked limitations in acquiring and using information.

[R. 19].

Plaintiff argues for reversal on the basis that the ALJ did not take his IQ score into account in the analysis.  According to Plaintiff, the Full Scale IQ Score of 79, which is borderline intelligence, establishes that Plaintiff has marked limitations in acquiring and using information.  Plaintiff essentially argues for a disability finding on the basis of his IQ

5

score without any demonstration of a corresponding functional limitation.  The court rejects this as a basis for a disability finding.

In child disability cases, as in adult cases, the disability determination is made based on demonstrated functional limitations, not on the basis of a mere diagnosis of a condition. *See e.g. Coleman v. Chater*, 58 F.3d 577, 579 (10th Cir. 1995)(the mere presence of alcoholism is not necessarily disabling, the impairment must render the claimant unable to engage in any substantial gainful employment), *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)(the mere diagnosis of arthritis says nothing about the severity of the condition), *Madrid v. Astrue*, 243 Fed.Appx. 387, 392 (10th Cir. 2007)(diagnosis of a condition does not establish disability, the question is whether an impairment significantly limits the ability to work), *Scull v Apfel*, 221 F.3d 1352 (10th Cir. 2000)(unpublished), 2000 WL 1028250 *1 (disability determinations turn on the functional consequences, not the causes of a claimant's condition).  The Commissioner's regulations explain that test scores will not be relied on alone, but are considered together with information about the claimant's functioning.  20 C.F.R. § 416.926a (4).  Plaintiff's argument about the ALJ's consideration of the IQ score is not coupled with any discussion of his functional limitations.

The court finds that the ALJ's finding about functional equivalence is supported by substantial evidence.

6

## Appointments Clause

Plaintiff argues that the case should be reversed because the ALJ who decided his case was not appointed in compliance with the Appointments Clause of the Constitution.[4] The Commissioner does not dispute that the ALJ was not constitutionally appointed[5] but argues that the court should not consider the argument because Plaintiff did not raise the issue during the administrative proceedings on his claim for benefits.  To be clear, the Commissioner does not contend that Plaintiff failed to complete any of the steps in the administrative process.  Rather, the Commissioner argues that Plaintiff failed to raise the particular issue during the administrative process.

The Appointments Clause issue has been raised in a number of recent cases in response to *Lucia v. S.E.C.*, – U.S. –, 138 S.Ct. 2044, 2055, 201 L.Ed.2d 464 (2018) which held that the ALJs in the Securities and Exchange Commission (SEC) were not constitutionally appointed.  The courts reviewing Social Security decisions where the Appointments Clause issue has been raised mostly find that the issue was forfeited because it was not raised before the Social Security Administration.[6]  These cases rely on

---

[4]  The Appointments Clause of the Constitution requires the President "to appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States."  U.S. Const. art. II ,§2, cl. 2.  It further provides that "Congress may by Laws vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the heads of Departments." *Id*.

[5]  For purposes of this brief, Defendant does not argue that SSA ALJs are employees rather than inferior officers.  [Dkt. 23, p. 10-11].

[6]  *Fortin v. Comn'r Soc. Sec.*, 2019 WL 1417161 (E.D. NC March 29, 2019)(rejecting magistrate judge's recommendation that court find no forfeiture occurred, finding that *Sims* left open the question of whether judicially created issue exhaustion at the ALJ level makes good sense; noting that Plaintiff in *Fortin* only brought up Appointments Clause issue in supplemental briefing after summary judgment), *Pearson v. Berryhill*, 2018 WL 6436092 (D. Kan. Dec. 7, 2018)(finding 42 U.S.C. § 406(g) contains nonwaivable and nonexcusable requirement that an individual must present a claim to the agency before raising it to the court and finding Plaintiff failed to raise Appointments Clause issue before agency rendered the challenge untimely), *Faulkner v. Commn'r Soc. Sec.*, 2018 WL 6059403 (W.D. Tenn. Nov. 19, 2018)(challenge under Appointments

the general rule that before an issue can be raised on appeal to the courts, it must have first been raised before the administrative agency.  They distinguish the result in *Lucia* based on language in that case that one who makes a "timely" challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to relief.  138 S.Ct. at 2055.  These cases find that the Social Security claimant, having not presented the issue to the administrative agency, has failed to make a timely Appointments Clause challenge.  The Commissioner's brief relies on similar arguments.[7]

A small number of cases rely on the Court's analysis in *Sims v. Apfel,* 550 U.S. 103, 105, 120 S.Ct. 2080, 147 L. Ed.2d 80 (2000) and conclude that the Appointments Clause issue was not forfeited.[8]  In *Sims* the Supreme Court concluded that Social Security claimants who exhaust administrative remedies need not also exhaust issues in a request for review by the Appeals Council in order to preserve judicial review of those issues.  In

---

Clause is nonjurisdictional and may be forfeited; challenge forfeited where Plaintiff did nothing to identify challenge before agency and good cause was not shown for failure).

[7] The Commissioner also cites five regulations it contends supports requiring issue exhaustion.  None of the regulations by their terms require issue exhaustion or notify claimants of an issue exhaustion requirement.

[8] *Kellett v. Berryhill*, 2019 WL 2339968 (E.D. Penn. June 3, 2019)(finding the Appointments Clause issue is an important issue that goes to the validity of SSA proceedings which should be heard even if not properly preserved before the ALJ; discussing *Sims* rationale applied to Appointments Clause issues and finding no forfeiture, and digesting cases), Ready *v. Berryhill,* 2019 WL 1934874 (E.D. .Penn. April 30, 2019)(finding no forfeiture and that it would have been futile for Plaintiff to raise the challenge at the agency level), *Probst v. Berryhill*, –F.Supp.3d – (E.D. NC 2019)(noting majority of courts have determined challenge is forfeited by failure to raise issue before agency, digesting cases; relying on *Sims* and nonadversarial nature of Social Security hearings, finding it would be manifestly unfair to find waiver), *Bizzare v. Berryhill*, 364 F.Supp.3d 418 (M.D. Penn. 2019)(acknowledging result breaks from emerging consensus, noting no statute, regulation or judicial decision indicates that Social Security claimants forfeit judicial review of constitutional claims not raised at the administrative level, finding no authority suggesting that ALJs could resolve constitutional challenges to their own appointment, and finding no forfeiture occurred).  See also *Cirko ex rel, Cirko v. Comn'r Soc. Sec.*, 948 F.3d 148 (Third Cir. 2020)(exhaustion of Appointments Clause claim is not required in SSA context).

reaching this conclusion, the Court considered the following factors.[9]  First, requirements to exhaust issues are largely creatures of statute and no statute requires issue exhaustion before the Social Security Administration.   Second, while it is common for agency regulations to require issue exhaustion, Social Security regulations do not require issue exhaustion.  Third, the reasons why courts generally impose issue exhaustion requirements do not apply to the non-adversarial process of the Social Security Administration.  Fourth, the Social Security Administration does not notify claimants of an issue exhaustion requirement.  *Sims*, 120 S.Ct. at 2084-86.

While *Sims* does not address issue exhaustion before the ALJ, the reasons cited by the Supreme Court to reject an issue exhaustion requirement before the Appeals Council also apply to the other steps in the Social Security Administration process.  The statute still does not require issue exhaustion.  In the 20 years since the *Sims* decision, the Social Security Administration has not enacted any regulation requiring issue exhaustion.  The Social Security Administrative process remains non-adversarial and claimants, many of whom are unrepresented, are still not notified of any issue exhaustion requirement. Finally, the undersigned notes that a ruling that *Sims* does not apply to the other steps in the administrative process would result in an issue exhaustion requirement at some steps of the process and not at subsequent steps.

---

[9]  The court also considered the limited space on the form used to request Appeals Council review and an estimate that it would take only ten minutes to complete the form.

The court is persuaded that the cases finding that no forfeiture occurs when the claimant fails to raise the Appointments Clause issue before the Social Security Administration are better reasoned in light of the Supreme Court's analysis in *Sims*.

The court finds that at the time the decision in this case was entered, September 28, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution.  The court further finds that Plaintiff did not forfeit the Appointments Clause claim by failing to raise that issue before the Social Security Administration.  As a result, the ALJ's decision must be REVERSED and the case is REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

## Conclusion

The court finds that the ALJ evaluated the record in accordance with the legal standards established by the Commissioner and the courts.  However, at the time the decision in this case was entered, September 28, 2017, the ALJ who issued the decision under review was not appropriately appointed under the Appointments Clause of the Constitution for that reason, the ALJ's decision is REVERSED and the case is REMANDED to the Commissioner for further proceedings before a different constitutionally appointed ALJ.

SO ORDERED this 5th day of May, 2020.


FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

10